# EXHIBIT 2

VedderPrice

Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

March 24, 2025

Mitchell D. Cohen
Shareholder
+1 212 407 6980
mcohen@vedderprice.com

**VIA EMAIL (ERIC.GRIBBIN@AKERMAN.COM)**

Eric Gribbin, Esq.
Akerman LLP
71 South Wacker Drive, 47th Fl.
Chicago, IL 60606

**Re: Response to March 19, 2025 Letter re: Alleged Title Deficiency – Mammoet / Forge Truck Centers LLC**

Dear Mr. Gribbin:

I represent Mammoet USA South, Inc. ("Mammoet") and write in response to your letter dated March 19, 2025, concerning the sale of four used Goldhofer THP/DL trailers (the "Equipment") to Forge Truck Centers, LLC ("Forge") pursuant to Equipment Sale and Purchase Agreement No. 0000.768.10.2024 (the "Agreement").

Your demand that Mammoet either (a) immediately deliver title documentation, or (b) refund the purchase price and recover the Equipment at its own expense, is both legally and contractually unsound.

As you are aware, Section 3.4 of the Agreement unambiguously states: "Title and ownership to the Equipment shall transfer from Seller to Buyer upon receipt by Seller of the Agreed Price in full." This occurred. Forge's obligation to complete payment triggered immediate transfer of ownership under the Agreement and in accordance with Texas Business and Commerce Code § 2.401, which governs passage of title under the UCC. The Agreement does not condition the transfer of title upon the delivery of any state-issued certificate of title or any other post-closing administrative formality.

The trailers were sold expressly "as is, where is" (Agreement, §1.1) and Forge accepted the Equipment under those terms. Under both the Agreement and established Texas law, including the UCC, an "as is" sale means the Buyer assumed the risk of any issues related to the Equipment's condition—including, by extension, administrative matters such as title documentation. Texas courts routinely enforce such clauses, particularly where, as here, there is no express warranty or specific representation regarding title in the contract. The Agreement is silent as to any requirement that Mammoet produce or deliver state-issued titles post-closing, and Forge had the opportunity to inspect and verify all material aspects of the Equipment prior to sale.

To suggest that failure to deliver title documentation constitutes a "breach" or grounds for rescission is entirely contrary to both the Agreement and Texas law. The Texas doctrine of caveat emptor—buyer beware—applies with full force to commercial transactions unless there has been fraud, misrepresentation, or breach of an express warranty. None of those apply here. Nor does this matter rise to the level of a "fundamental breach" that could support rescission. At most, if Forge had valid



Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

concerns regarding the administrative processing of titles, those could have been addressed before execution of the Agreement or delivery of the Equipment. Instead, Forge accepted the Equipment, paid in full, and is now attempting to manufacture a post hoc theory of breach based on its own failure to address formalities within its control.

Finally, while Mammoet is under no contractual or legal obligation to take any further action, it remains willing, as a courtesy and without waiver of rights, to cooperate in good faith to resolve any title-related documentation if such resolution is administratively feasible. That said, Forge's assertion that Mammoet must either refund the Agreed Price or retake the Equipment is categorically rejected.

Mammoet reserves all rights, remedies, and defenses in connection with this matter, and will vigorously oppose any claim brought on the untenable grounds set forth in your letter.

Very truly yours,

Mitchell D. Cohen

Mitchell D. Cohen
Shareholder

MDC/yco